**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JERALD DEON CONEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00318-O-BP** |
| | § | |
| **TJX COMPANIES, INC., *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

---

| | | |
|---|---|---|
| **JERALD DEON CONEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00713-P-BJ** |
| | § | |
| **WORKERS UNITED SOUTHWEST,** | § | |
| **REGIONAL JOINT BOARD, ET AL.** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

On March 17, 2026, *pro se* Plaintiff Jerald Deon Coney sued TJX Companies, Inc. and Homegoods Fort Worth Merchants, LLC in Civil Action No. 4:26-cv-00318-O-BP 1 (the "TJX Case"). ECF No. 1. The case was assigned to the undersigned pursuant to Special Order 3. ECF No. 2. On June 11, 2026, Coney filed another suit involving the same facts against Workers United Southwest Regional Joint Board, Workers United (SEIU), Lynne Fox, and Jene Hervey in Civil Action No. 4:26-cv-00713-P-BJ (the "Workers United Case"). ECF No. 1, Workers United Case. That case was automatically assigned to United States Magistrate Judge Jeffrey L. Cureton pursuant to Special Order 3. Workers United Case, ECF No. 3.

After considering the pleadings and applicable legal authorities in the TJX case and the Workers United Case, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **CONSOLIDATE** the Workers United Case with the TJX Case.

## I. BACKGROUND

Both of Coney's lawsuits arise from his employment and subsequent termination from a job at the Homegoods distribution center in Fort Worth. TJX Case, ECF No. 24 at 6. The following discussion of the facts comes from Coney's complaints in both cases. Coney began working at the distribution center on April 1, 2024. *Id.* On that same day, Workers United first became active as the employee union for the distribution center. *Id.* at 7-8. Approximately 90 days after Coney started his job, one of his immediate supervisors, Jayde Casey, issued him a disciplinary write up for missing a staff meeting. *Id.* at 9. After refusing to sign the disciplinary document, Coney stated he would "be getting with a union official to find out [his] rights." *Id.* Coney then contacted the business agent for Workers United, Clemente Guzman, seeking aid or guidance from the union regarding his working environment. *Id.* at 10. Coney asked Guzman for a Union CBA Handbook but was told that "nobody had been issued one yet." *Id.*

Following this first disciplinary interaction, one of Coney's coworkers shared that his supervisors had written him up twice for the same conduct for which Coney had been disciplined. *Id.* at 11. Coney and his coworker then began privately asking some of the women who worked in their department if they had experienced similar treatment until Casey allegedly told Coney, "I'm not for sure, but if you are, stop talking to your coworkers about Union business." *Id.* Coney then received a second write up for being on his phone at work, which he again refused to sign. *Id.*

Coney alleges that he began experiencing discrimination and retaliation from Casey after these interactions. Specifically, he asserts that Casey was micromanaging, targeting, and harassing

him like she was "trying to catch [him] doing something wrong." *Id.* Additionally, Coney claims Casey showed favoritism toward his Hispanic female coworkers by letting them work in his assigned lanes at the distribution center, and that she became angry with him for "working from the back of the lanes" after telling him it was okay to do so. *Id.* at 12-13. Casey issued Coney a third write up for his conduct even though a union representative allegedly wrote a statement indicating that Casey allowed the female employees in the distribution center to work from the back of the lanes and did not discipline them for doing so. *Id.*

Coney asserts that while working directly in front of Casey's desk on August 20, 2024, he became so stressed that he made an appointment with his primary care physician. *Id.* at 13. His physician stated that his "PTSD was extremely elevated" and recommended that he take thirty days off from work on medical leave. *Id.* at 14. On August 28, Coney received an email stating he was approved for his medical leave. *Id.* The next day, Coney received notice that he was terminated "for breaking two violations on August 15, 2024." *Id.* Coney asserts that nobody made him aware of any violations while he was at work from August 15 through August 18. *Id.*

Following his termination, Coney apparently worked with Clemente Guzman on filing formal grievances against Homegoods. *See id.* at 15. Coney alleges Guzman was unprofessional, gave him misguided information, and misrepresented him throughout the grievance process, resulting in the loss of his grievance claims. *Id.* at 15.

Coney filed the TJX case on March 17, 2026, alleging claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. TJX Case, ECF No. 1 at 3. Coney thereafter filed the United Workers case, asserting a litany of claims under Title VII, the Americans with Disabilities Act, 42 U.S.C. § 1981, the Labor Management Reporting and Disclosure Act, and the National Labor Relations Act. Workers United Case, ECF No. 1 at 3. Coney has since filed an amended

complaint in both cases. The two filings are identical in every other way except for the separate civil case cover sheets. *See* TJX Case, ECF No. 24; Workers United Case, ECF No. 24. The Court ordered the parties to file a Joint Status Report stating their position regarding consolidation. *See* TJX Case, ECF No. 31. Coney and Defendants in the TJX Case agree that consolidation of the Workers United Case into the earlier filed TJX Case is appropriate. *Id.* at 1. Defendants in the Workers United Case believe that the Court should defer a decision on consolidation until after the Court rules on its pending motion to dismiss but take no position as to whether the Court should consolidate the cases after ruling on the motion. *Id.*; *see also* Workers United Case, ECF No. 34.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(a), "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

> When considering whether consolidation is appropriate, the Court considers the following factors: (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, whether the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately.

*Madison v. Health Care Services Corp.*, No. W-20-cv-00835-ADA-DTG, 2022 WL 22877790, at *1 (W.D. Tex. July 14, 2022) (citing in *Tex. Gen. Land Office v. Biden*, No. 6:21-CV-00052, 2021 WL 5588160, at *2 (S.D. Tex. Nov. 29, 2021).

The Court may *sua sponte* consolidate lawsuits under Rule 42(a). *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984). Consolidation means "the joining together—but not the complete merger—of constituent cases." *See Hall v. Hall*, 584 U.S. 59, 66 (2018) (discussing

Rule 42(a)(2)). Consolidating does not "deprive any party of any substantial rights which he may have possessed had the actions proceeded separately." *Id.* at 76 (quoting 3 J. MOORE & J. FRIEDMAN, MOORE'S FEDERAL PRACTICE § 42.01, pp. 3050-51 (1938)). Rather, it facilitates efficient dispute resolution by minimizing unnecessary cost or delay. *Gentry v. Smith*, 487 F.2d 571, 580-81 (5th Cir. 1973) (citing Fed. R. Civ. P. 42(a)). The Court may consolidate cases for "all purposes," including pretrial proceedings, trial, and appeal. *Hall*, 584 U.S. at 77; *see, e.g.*, *Kin-Yip Chun v. Fluor Corp.*, No. 3:18-cv-01338-X, 2020 WL 2745527, at *6 (N.D. Tex. May 26, 2020); *Russo v. Alamosa Holdings, Inc.*, No. 5:03-cv-289-C, 2004 WL 579378, at *1 (N.D. Tex. Feb. 27, 2004).

Procedurally, the consolidating court may direct its clerk to administratively close the second lawsuit. *See, e.g.*, *Kin-Yip Chun*, 2020 WL 2745527, at *6; *Russo*, 2004 WL 579378, at *1; *see generally Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (explaining administrative closure). Afterward, "all pleadings, motions, or other papers must only bear the caption of the first case filed," and "[a]ll post-consolidation filings must also bear the legend '(Consolidated with [giving the docket numbers of all the other cases]).'" L. Civ. R. 42.1. Consolidating still "requires entry of a separate judgment," as the consolidated cases "maintain their separate identity." *Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1532 (5th Cir. 1993) (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, (1933), and 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2382 (1971)). Courts have broad discretion to decide whether cases should be consolidated. *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *see also Frazier*, 980 F.2d at 1531 (same).

## III. ANALYSIS

Rule 42's threshold inquiry is whether the two cases involve common questions of law or fact. Fed. R. Civ. P. 42(a); *RTIC Drinkware, LLC v. YETI Coolers, LLC*, No. 1:16-cv-907-RP, 2017 WL 5244173, at *2 (W.D. Tex. Jan. 18, 2017). Here, both of Coney's lawsuits arise from his employment and termination at the Homegoods distribution center in Fort Worth. Through his identical amended complaints, Coney discusses both the disciplinary actions his supervisor took against him and interactions he had with union representatives while he was employed and during the post-termination grievance process. The same facts underly Coney's claims against the defendants in both cases.

It is unlikely that consolidation of the cases would cause unnecessary cost or delay. First, although the cases are currently before different district judges and magistrate judges, both actions are pending in this Court. Second, both cases are in the pre-trial stage, with neither case yet set for trial, though the TJX Case is under a scheduling order with discovery and dispositive motion deadlines set in December 2026, and the Defendants in the Workers United Case have filed a motion to dismiss for lack of jurisdiction and for failure to state a claim. *See* TJX Case, ECF No. 30; Workers United Case, ECF No. 34. The Workers United Defendants' position is that the scheduling order and motion to dismiss support keeping the cases separate. TJX Case, ECF No. 32 at 1; Workers United Case, ECF No. 40 at 2. But the Court finds no reason why it cannot rule on the motion to dismiss after consolidating the cases, especially given the identical factual pleadings. And the Court can amend the current scheduling order if it is appropriate to do so. Third, there is no indication consolidation would cause undue prejudice or confusion. Coney filed his amended complaints in each case within four days of the other. *See RTIC Drinkware, LLC*, 2017 WL 5244173, at *3 (prejudice could result if consolidation would delay trial nearly a year). And

his claims against the defendants arise from conduct that occurred within the same period from April to November 2024. *See Tanzy v. Wolf*, No. 3:20-cv-3161-X-BH, 2020 WL 11627343, at *2 (N.D. Tex. Dec. 23, 2020) (confusion could result from trying together two cases with claims arising from different time frames).

Fifth, it is reasonable to conclude that consolidation would minimize cost and delay since the parties could litigate common legal and factual questions in one action and reduce duplicative discovery and the chance of different final results. *But see RTIC Drinkware, LLC*, 2017 WL 5244173, at *3 ("Yet, consolidation is not necessary to avoid duplicative discovery."). Furthermore, placing both cases before the same district and magistrate judges would reduce the risk of inconsistent adjudications. *See Bucklew v. Bonham*, No. 3:19-cv-435-N, 2019 WL 2141792, at *2 (N.D. Tex. May 16, 2019).

The factor that weighs most against consolidation is that the cases involve different defendants. Coney's employer, Homegoods, and its parent company TJX Companies, Inc., are the defendants in the TJX Case, and the union, Workers United, and people related to the union, are the defendants in the Workers United Case. But any risk of confusion or prejudice is small compared with the benefit that comes with consolidating two cases based on identical complaints alleging the exact same facts in separate cases. Accordingly, Chief Judge O'Connor should consolidate the TJX case and the Workers United case. Because Coney filed the TJX case first, the Court should consolidate the Workers United case with it. L. Civ. R. 42.1.

## IV. CONCLUSION

Because consolidation of the TJX Case and the Workers United Case would serve the interests of justice, the undersigned **RECOMMENDS** that Chief Judge O'Connor **CONSOLIDATE** *Coney v. Workers United Southwest Regional Joint Board Workers United*, Civil Action No. 4:26-cv-00713-P-BJ with *Coney v. TJX Companies, Inc.*, Civil Action No. 4:26-

cv-00318-O-BP. The undersigned further **RECOMMENDS** that Chief Judge O'Connor direct the Clerk of Court to administratively close No. 4:26-cv-00713-P-BJ, and order the parties to file all future pleadings, motions, or other papers in *Coney v. TJX Companies, Inc.*, Civil Action No. 4:26-cv-00318-O-BP with the legend "(Consolidated with Civil Action No. 4:26-cv-00713-P-BJ), as provided in Local Civil Rule 42.1.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on October 16, 2026.

Hal R. Ray, Jr.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE